UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALFONSO MANUEL BLAKE, | ) |
| Petitioner, | ) 3:09-cv-00327-RCJ-RAM |
| vs. | ) |
| | ) **ORDER** |
| E.K. McDANIEL, *et al.*, | ) |
| Respondents. | ) |

Pending before the court are petitioner's motion for stay and abeyance (docket #29) and respondents' motion to dismiss (docket #33). Because the latter motion is premised almost entirely on petitioner's failure to exhaust state court remedies and the former motion seeks a stay for the purpose of correcting that shortcoming, the motions are inextricably intertwined.[1] With this order, the court decides both motions.

**I.    Background**

In March 2004, a jury sitting in the Clark County Eighth Judicial District Court found Blake guilty of two counts of first-degree murder with the use of a deadly weapon and returned a sentence of death. The jury also found Blake guilty of attempted murder with the use of a deadly weapon, for which he was sentenced to two consecutive terms of 96 to 240 months in prison.

---

[1] Respondents also raised a timeliness argument in their motion to dismiss, but withdrew the argument in their reply. Docket #51.

On direct appeal, the Nevada Supreme Court affirmed the convictions and sentences in a decision issued in October 2005. *Blake v. State*, 121 P.3d 567 (Nev. 2005). Blake initiated state post-conviction proceedings on June 22, 2006. In May 2007, with the assistance of appointed counsel, he filed a supplemental petition. Without holding an evidentiary hearing, the state district court denied relief with a decision entered in October 2007. Blake appealed. In February 2009, the Nevada Supreme Court affirmed the lower court. *Blake v. State*, 2009 WL 1491366 (Nev.).

On June 24, 2009, Blake initiated this federal habeas proceeding. On March 4, 2010, he filed an amended petition for writ of habeas corpus. Docket #17. Shortly thereafter, on April 14, 2010, he filed the motion for stay and abeyance. Docket #29. On July 19, 2010, the respondents' filed the motion to dismiss and their opposition to Blake's motion for stay and abeyance.

## II. Discussion

### 1. *Motion for Stay and Abeyance*

Blake requests that this court stay and hold in abeyance his federal habeas proceedings while he returns to state court to exhaust his remedies for his currently unexhausted claims. In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that, to prevent petitioners from having unexhausted claims time-barred under AEDPA,[2] a district court has discretion to stay, rather than dismiss, a mixed petition (i.e., a petition containing both exhausted and unexhausted claims). *Id* at 275.

The Court also held, however, that that discretion is limited by AEDPA's twin purposes: "reduc[ing] delays in the execution of state and federal criminal sentences" and encouraging state "petitioners to seek relief from state courts in the first instance." *Id*. at 276 (internal quotation marks omitted). Thus, the Court concluded that stay-and-abeyance is appropriate only when the district court determines that there was "good cause" for the petitioner's failure to exhaust his claims and is improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id*. at 277-78. When the foregoing requirements for a stay are not met, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996.

exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id*.

By Blake's own admission, most of his pending claims are partially or fully unexhausted. Docket #29, p. 3; docket #50, p. 6. *Rhines* does not go into detail as to what constitutes good cause for failure to exhaust; and, the Ninth Circuit has provided no clear guidance beyond holding that the test is less stringent than an "extraordinary circumstances" standard. *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005) (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1979)). Many district courts have concluded that the standard is more generous than the showing needed for "cause" to excuse a procedural default. *See*, *e.g.*, *Rhines v. Weber*, 408 F.Supp.2d 844, 849 (D. S.D. 2005) (applying the Supreme Court's mandate on remand). This view finds support in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), where the Supreme Court acknowledged that a petitioner's "reasonable confusion" about the timeliness of his federal petition would generally constitute good cause for his failure to exhaust state remedies before filing his federal petition. 544 U.S. at 416-17.

On the other hand, a request for a *Rhines* stay must be assessed "in light of the Supreme Court's instruction that the district court should only stay mixed petitions in 'limited circumstances.'" *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 273-75). In *Wooten*, the petitioner tried to show good cause under *Rhines* "by stating that he was 'under the impression' that his counsel included all of the issues raised before the California Court of Appeal in his petition before the California Supreme Court." 540 F.3d at 1024. Finding that justification inadequate, the Ninth Circuit explained as follows:

> . . . To accept that a petitioner's "impression" that a claim had been included in an appellate brief constitutes "good cause" would render stay-and-obey orders routine. Indeed, if the court was willing to stay mixed petitions based on a petitioner's lack of knowledge that a claim was not exhausted, virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay. Such a scheme would run afoul of *Rhines* and its instruction that district courts should only stay mixed petitions in "limited circumstances."

*Id*. (emphasis in original, citation omitted).

Here, Blake asserts that he meets *Rhines*'s good cause requirement because of the ineffectiveness

3

1  of his state court counsel, particularly post-conviction counsel. According to Blake, his post-conviction
2  counsel failed to raise several potentially meritorious claims in state court proceedings and that such
3  failure was beyond his control. As support for his argument that this constitutes good cause, he notes
4  that this court, in *Riner v. Crawford*, 415 F.Supp.2d 1207 (D.Nev.2006), only required a petitioner to
5  show "that he was prevented from raising the claim, either by his own ignorance or confusion about the
6  law or the status of his case, or by circumstances over which he had little or no control, such as the
7  actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim
8  or when petitioner had no knowledge of the claim's existence." *Id*. at 1211.

9        The decision in *Wooten*, however, undermines Blake's reliance on *Riner*. Like the petitioner's
10 claim in *Wooten* that he was under the impression that counsel had raised unexhausted claims, Blake's
11 justification – i.e., that his post-conviction counsel performed ineffectively in failing to raise unexhausted
12 claims – is one that could be raised in virtually every case. In short, acceptance of Blake's good-cause
13 theory would conflict with the Supreme Court's guidance, in *Rhines*, that mixed petitions should only
14 be stayed in limited circumstances, and it would run contrary to the goals of AEDPA. Thus, Blake's
15 motion for stay and abeyance shall be denied because he has not shown good cause for his failure to
16 exhaust his claims in state court before proceeding in federal court.

17         2.  *Motion to Dismiss*

18       With their motion to dismiss, respondents argue that all of the claims in Blake's amended petition
19 are yet to be fully exhausted in state court. Exhaustion of state remedies is a prerequisite to a federal
20 court's consideration of a petition for a writ of habeas corpus. 28 U.S.C. §2254(b). To exhaust a ground
21 for relief, a petitioner must fairly present that ground for relief to the state's highest court, and must give
22 that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995);
23 *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

24       The "fair presentation" requirement is satisfied when the claim has been presented to the highest
25 state court by describing the operative facts and the legal theory upon which the federal claim is based.
26 *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982),

4

*cert. denied*, 463 U.S. 1212 (1983).  To fairly present a federal claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United States Constitution.  *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 365-66), *cert. denied*, 529 U.S. 1009 (2000).

The mere similarity of claims of state and federal error is insufficient to establish exhaustion.  *Hiivala*, 195 F.3d at 1106, (citing *Duncan*, 513 U.S. at 366); *see also Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir. 2000), *as modified by*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne,* 223 F.3d 982, 987 (9th Cir. 2000).  The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims."  *Lyons*, 232 F.3d at 670.  This is accomplished either by referencing a specific provisions of the federal constitution or by citing to either a federal or state case involving the legal standard for a federal constitutional violation.  *See id.*; *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hiivala*, 195 F.3d at 1106, (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *see also Shumway*, 223 F.3d at 987.

As noted, Blake concedes lack of exhaustion for most of his claims.  He argues, however, that he presented Claims Six(C), Seven(G), Eight, and Fourteen to the Nevada Supreme Court.  With respect to Claims Eight, Nine, Eleven, and Fourteen, he contends that these claims should be deemed exhausted by virtue of the Nevada Supreme Court's duty to review death penalty cases under Nev. Rev. Stat. 177.055[3] or its willingness to *sua sponte* review death penalty cases for constitutional error.  Because Blake does not dispute that all of his other claims are unexhausted, the following analysis is confined to Claims Six(C), Seven(G), Eight, Nine, Eleven, and Fourteen.

In Claim Six (C), Blake claims that the State committed prosecutorial misconduct, in violation of his rights under the Due Process Clause and the Eighth Amendment, by arguing to the jury that it

---

[3] Nev. Rev. Stat. 177.055 requires the Nevada Supreme Court, in death penalty cases, to review not only those errors actually asserted by the defendant on appeal, but also the sufficiency of the evidence supporting aggravating factors, whether the death sentence was imposed as a result of passion, prejudice, or any arbitrary factor, and whether the sentence was excessive.

should sentence him to death as an expression of anger and societal outrage and as a way to deter future crime.  In Claim Seven(G), Blake claims that the trial court violated his rights under the Due Process Clause and the Eighth Amendment by not allowing him to display demonstrative photographs of a prison cell and a lethal injection bed during closing argument in the penalty phase.

In Claim Eight, Blake claims a violation of the Due Process Clause and the Eighth Amendment because one of the aggravating factors found by the jury (i.e., the murder was committed to avoid or prevent lawful arrest) is impermissibly vague and overbroad.

In Claim Nine, Blake claims a violation of various constitutional rights due to the trial court's use of several improper jury instructions.

In Claim Eleven, Blake claims that several of his constitutional rights were violated because the aggravating factors used to support the death penalty in his case were not submitted for a probable cause determination before trial.  In Claim Fourteen, claims that the sentence of death by way of lethal injection violates several constitutional guarantees, including the Eighth Amendment.        In order to find any of Blake's claims exhausted by virtue of the Nevada Supreme Court's review under Nev. Rev. Stat. 177.055, this court must be satisfied that such review encompassed the specific factual and a federal law grounds advanced by Blake in his federal petition. *See Comer v. Schriro*, 463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme Court's independent review process).  In allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to Arizona's statutes and case law, the Arizona Supreme Court "examines the entire record, particularly the sentencing hearing, to determine if any procedural errors occurred or other arbitrary factors influenced the sentencing court's decision to impose the death sentence," and that the court "is clearly conscious of its duty to respect the dictates of the Eighth and Fourteenth Amendments and to ensure that the death penalty is not imposed in an arbitrary and capricious fashion." *Id*. at 955.  In addition, the court of appeals held that only claims that are "clearly encompassed within Arizona's independent review" and "readily apparent from record" will be deemed impliedly exhausted. *Id*. at 956.

6

Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to apply federal law standards in conducting its review under Nev. Rev. Stat. 177.055. *Sechrest v. Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996). Moreover, Blake has not shown that Claim Eight, Nine, Eleven, or Fourteen is "clearly encompassed" within the scope of Nev. Rev. Stat. 177.055 or that any of them is "readily apparent" in the record reviewed by the Nevada Supreme Court. Consequently, none of Blake's claims shall be deemed exhausted by virtue of Nev. Rev. Stat. 177.055.

With regard to the Nevada Supreme Court's purported willingness to *sua sponte* address a potential constitutional violation, Blake cites to *Bejarano v. State*, 801 P.2d 1388 (Nev. 1990). In that case, the Nevada Supreme Court considered *sua sponte* whether trial counsel's failure to present evidence of the appellant's personality disorders and a low intelligence as mitigating circumstances constituted ineffective assistance of counsel. *Bejarano*, 801 P.2d at 1390. In doing so, the court cited to the then-recent decision in *Deutscher v. Whitley*, 884 F.2d 1152 (9th Cir. 1989), a case in which the Ninth Circuit found ineffective assistance of counsel based on similar circumstances.

Of course, simply because the state supreme court chose *sua sponte* to address a salient constitutional issue in a particular case does not mean that the court considers such issues in all capital cases. Indeed, the fact that Blake cites to only one case suggests that *sua sponte* review of constitutional issues is an exception, not a rule, for the Nevada Supreme Court. As such, this court finds no merit to Blake's argument that the Nevada Supreme Court's "practice" of reviewing cases for constitutional error *sua sponte* effects exhaustion of claims that he did not present to the state supreme court.

As for the claims Blake identifies as those he exhausted by presenting them to the Nevada Supreme Court, this court finds as follows. Blake presented the operative facts and legal theories advanced in Claim Six(C) and Seven(G) in his direct appeal to the Nevada Supreme Court. Docket #43, exhibit 117-B, p. 39-43 and 59-62. While Blake alleged additional constitutional violations in his federal petition, he has since withdrawn those claims. Docket #47. As such, Claim Six(C) and Seven(G) are exhausted.

///

7

Blake also exhausted Claims Eight and Fourteen in his direct appeal to the Nevada Supreme Court. Docket #43; exhibit 117-A, p. 24-27, and exhibit 117-B, p. 44-51. While the issues were framed a little differently in his state court appeal, both claims, respectively, raise the same constitutional arguments and rely on essentially the same factual allegations. Accordingly, Claims Eight and Fourteen are exhausted.[4]

In summary, Claims Six(C), Seven(G), Eight and Fourteen are the only exhausted claims in Blake's amended petition. The following claims are unexhausted: Claims One through Five, Six(A)(B)and(D), Seven(A-F)(H-J), and Nine through Thirteen.

### III.   Conclusion

As noted above, the *Rhines* decision includes clear instruction regarding the treatment of unexhausted claims where a stay is not warranted:

> . . . [I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. *See* [*Lundy*], at 520, 102 S.Ct. 1198 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Rhines*, 544 U.S. at 278.

Therefore, the court will provide Blake with an opportunity to abandon Claims One through Five, Six(A)(B)and(D), Seven(A-F)(H-J), and Nine through Thirteen. If Blake abandons those claims, this case will proceed on the claims remaining in the amended petition (i.e., Claims Six(C), Seven(G), Eight and Fourteen). If petitioner does not abandon Claims One through Five, Six(A)(B)and(D), Seven(A-F)(H-J), and Nine through Thirteen, Blake's entire amended petition will be dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982).

///

---

[4] Here again, Blake has withdrawn additional alleged constitutional violations that would have rendered the claims unexhausted. Docket #47.

**IT IS THEREFORE ORDERED** that petitioner's motion for stay and abeyance (docket #29) is DENIED.

**IT IS FURTHER ORDERED** that respondents' motion to dismiss (docket #33) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that petitioner shall have **twenty (20) days** from the date this order is entered within which to file a Notice of Abandonment of Unexhausted Claims, indicating that Claims One through Five, Six(A)(B)and(D), Seven(A-F)(H-J), and Nine through Thirteen are to be deleted from his amended petition (docket #17).

**IT IS FURTHER ORDERED** that, if petitioner does not abandon his unexhausted claims within the time allowed, the amended petition (docket #17) shall be dismissed under *Rose v. Lundy*, 455 U.S. 509 (1982).

**IT IS FURTHER ORDERED** that, if petitioner abandons his unexhausted claims within the time allowed, respondents shall have **sixty (60) days** from the date the Notice of Abandonment is filed within which to file an Answer to the remaining claims in the second revised amended petition (docket #17).

**IT IS FURTHER ORDERED** that respondents' and petitioner's motions for extension of time (Docket ##32/48) are **GRANTED** *nunc pro tunc* as of the date each was filed, respectively.

DATED: This 2nd day of November, 2010.

_____
UNITED STATES DISTRICT JUDGE