# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| ALFONSO MANUEL BLAKE, | Case No. 3:09-cv-00327-RCJ-RAM |
|---|---|
| Petitioner, | |
| v. | ORDER |
| TIMOTHY FILSON, | |
| Respondent. | |

Before the court is petitioner Blake's motion for evidentiary hearing in this habeas proceeding under 28 U.S.C. § 2254. ECF No. 176. Blake seeks to present evidence in support of ineffective assistance of counsel (IAC) claims alleged under Grounds One through Four of his second amended habeas petition (ECF No. 124). According to Blake, the evidence will demonstrate that his default of the claims should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and that the claims warrant habeas relief.

Under 28 USC § 2254(e)(2), a petitioner is generally not entitled to evidentiary development on a claim for relief where the petitioner "failed to develop the factual basis of a claim in State court proceedings" due to "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoners counsel." The Ninth Circuit has held, however, that § 2254(e)(2) "does not bar a hearing before the district court to allow a petitioner to show 'cause' under *Martinez*" because a petitioner seeking to show cause

based on ineffective assistance of post-conviction review (PCR) counsel is not asserting a claim for relief. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014). The court explained:

> [A] petitioner, claiming that PCR counsel's ineffective assistance constituted "cause," may present evidence to demonstrate this point. The petitioner is also entitled to present evidence to demonstrate that there is "prejudice," that is that petitioner's claim is "substantial" under *Martinez*. Therefore, a district court may take evidence to the extent necessary to determine whether the petitioner's claim of ineffective assistance of trial counsel is substantial under *Martinez*.

*Id.*

The Ninth Circuit has explained the showing a petitioner must make to take advantage of *Martinez*:

> Where, as here, the state criminal justice system satisfies the characteristics required by *Martinez*, the petitioner must make two related showings about the strength of his particular IAC claim to excuse its default.
>
> First, the IAC claim must be "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318. Thus, there must be a substantial showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. 2052.
>
> Second, a petitioner must show that "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*." *Martinez*, 132 S.Ct. at 1318. Construing *Martinez*, we have held that, to fulfill this requirement, a petitioner must show not only that PCR counsel performed deficiently, but also that this prejudiced the petitioner, i.e., that "there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Pizzuto v. Ramirez*, 783 F.3d 1171, 1178 (9th Cir. 2015) (quoting *Clabourne v. Ryan*, 745 F.3d 362, 367 (9th Cir.), *proceedings suspended and mandate stayed* (Apr. 2, 2014), *and overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 818 (9th Cir. 2015) (en banc)). Although the prejudice at issue is that in PCR proceedings, this is a recursive standard. It requires the reviewing court to assess trial counsel's as well as PCR counsel's performance. This is because, for us to find a

> reasonable probability that PCR counsel prejudiced a petitioner by failing to raise a trial-level IAC claim, we must also find a reasonable probability that the trial-level IAC claim would have succeeded had it been raised.

*Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016) (footnote omitted).

With his motion, Blake identifies the following "proposed subjects" for an evidentiary hearing: (1) experts on fetal alcohol spectrum disorders (FASD) and institutional risk of future dangerousness; (2) neuropsychological and psychological / trauma experts; (3) family, friends, and trial counsel; and (4) "cause" under *Martinez*. The court will address each subject in turn.

1. *Expert on FASD.*

In Claim Two(C) of his second amended petition, Blake alleges that his trial counsel was ineffective in failing to investigate and obtain the services of an expert on FASD. ECF No. 124, p. 45-49. As evidentiary support for this claim, he has proffered the declaration of Natalie Novick-Brown, Ph.D., a professed expert on FASD. ECF No. 125-10, p. 121-35. According to the declaration, Blake's counsel provided Novick-Brown "with preliminary information and materials relevant to this matter on February 14, [2011]." Id, p. 123. Based on that information, Novick-Brown "concluded that a diagnosis of an FASD condition is highly likely once Alfonso Blake undergoes medical assessment." *Id.*, p. 124. Later in the declaration, she states "there is abundant preliminary information in the few records reviewed for this declaration to support a conclusion that an FASD diagnosis is LIKELY." *Id.*, p. 130.

Blake does not claim, nor does the record indicate, that the "medical assessment" referred to in the declaration or any additional inquiry has ever been conducted. For the purposes *Strickland*, "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Inconclusive new evidence that a petitioner may or may not suffer from some sort of cognitive dysfunction does not generally establish an ineffective assistance of counsel claim. *See Smith v. Quarterman,* 515 F.3d 392, 405 (5th Cir. 2008). Thus, even

taken at face value, Novick-Brown's declaration falls well short of establishing a reasonable probability that the results of Blake's PCR proceeding would have been different had state PCR counsel advanced Claim Two(C) in Blake's initial-review collateral proceeding. Accordingly, this court sees no reason to grant an evidentiary hearing in relation to Novick-Brown's assessment.

   2. *Expert on institutional risk of future dangerousness.*

In Claim Two(F) of his second amended petition, Blake alleges his trial counsel was ineffective in failing to obtain an institutionalization expert for the purposes of rebutting the state's evidence in aggravation. ECF No. 124, p. 53-56. As evidentiary support for this claim, he has proffered the declaration of Mark D. Cunningham, Ph.D., a professed expert on future dangerousness, with a focus on the probability of violence by capital offenders in prison. ECF No. 125-10, p. 137-48. In his declaration, Cunningham identified the following factors that "would be associated with a reduced risk of prison violence for Mr. Blake relative to broader categories of inmates or capital offenders": (1) age, (2) continuing contact with community members, (3) education, (4) employment, and (5) past correctional behavior. *Id.*, p. 6-7. Blake claims that testimony from an expert like Cunningham "would have convinced the jury that a life verdict was appropriate." ECF No. 124, p. 54.

The hiring of expert witnesses and the presentation of their testimony is a matter of trial strategy. *Harrington v. Richter*, 562 U.S. 86, 107 (2011). "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir.2009).

In the penalty phase of Blake's trial, the State did not present evidence specifically intended to demonstrate his future dangerousness nor was future dangerousness an issue to be decided by the jury. Instead, Blake faults counsel for not

presenting evidence to rebut the State's assertion in closing argument that the imposition of the death penalty would guarantee that Blake "never kills again." ECF No. 124, p. 53. Under the circumstances, counsel's failure to retain a future dangerousness expert cannot be equated to representation that fell "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 686.

In addition, given the brutal nature of Blake's crimes and his history of violence, there is not a reasonable probability that the jury in Blake's trial would not have imposed the death penalty if it had presented with the information in Cunningham's declaration. *See Blake v. State*, 121 P.3d 567, 573 (Nev. 2005) (describing evidence presented in penalty phase of Blake's trial). Therefore, if Blake had raised this IAC claim in his initial state post-conviction proceeding, there is not a reasonable probability that "the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377. And, Blake has not convinced this court that granting him an evidentiary hearing on the issue has any possibility of changing this result.

       3.   *Neuropsychological and psychological / trauma experts.*

Blake argues that proffered evidence provided by neuropsychological and psychological / trauma experts is relevant to Claims One through Four of his habeas petition. Claim One is, in essence, a cumulative error claim premised on alleged ineffectiveness throughout the entirety of trial counsel's representation. In Claim Two(A), Blake alleges his trial counsel was ineffective in hiring and failing to adequately prepare the mental health expert, Louis Mortillaro, Ph.D., who testified for the defense. In Claim Two(B), he alleges his trial counsel was ineffective in failing to counsel were ineffective in failing to investigate and retain the services of a neuropsychologist. ECF No. 124, p. 43-45. In Claim Three, he alleges trial counsel was ineffective in directing him to enter a plea of not guilty by reason of insanity based upon their misapprehension of the elements of that defense. In Claim Four, he alleges trial counsel was ineffective by failing to investigate and present evidence regarding Blake's dysfunctional family

history, which included sexual, physical and substance abuse, neglect, extreme poverty and racism, and fetal brain injuries and prenatal abnormalities.

In overturning this court's prior decision to deny Blake an exhaustion stay, the Ninth Circuit concluded that Blake's allegations and evidence of ineffective assistance of state PCR counsel served as good cause to grant him a stay under *Rhines v. Weber*, 544 U.S. 269 (2005). *Blake v. Baker*, 745 F.3d 977, 982-844 (9th Cir.). The decision of the court of appeals included the following excerpt:

> Blake supported his good cause argument with evidence of his abusive upbringing and history of mental illness, compiled by his federal post-conviction counsel. For example, Blake provided a neuropsychological and psychological evaluation report that highlighted "numerous neuropsychiatric and psychiatric conditions [Blake suffered from] at the time of the homicides," none of which was presented to the jury or to the state court.[5]
>
> Blake also submitted a declaration by the private investigator hired by his state post-conviction attorney stating that within a week of receiving "thousands of pages of discovery on Blake's case," Blake's state post-conviction attorney told the investigator "that [his] services were no longer needed." The investigator declared that he "did not have a chance to speak with a single witness on Blake's case because it was over before [he] finished [his] review of the discovery materials."
>
> Blake also provided thirteen declarations from Blake's family and friends. Most of them described the abhorrent conditions of Blake's upbringing and family history, in extensive and gruesome detail. None of these witnesses was contacted by Blake's state post-conviction attorney.[6] And no evidence of Blake's background was ever presented to the Nevada state courts. This is a sufficient showing that Blake's state post-conviction counsel's performance was defective under the standard of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

[5] The report concluded that Blake suffered from, and continues to suffer from, "Tourette's Disorder; Dementia/Chronic Brain Damage; Organic Personality Syndrome/Personality Change due to Brain Damage; Panic Disorder; and Obsessive Compulsive Disorder."

[6] Three individuals—two of Blake's siblings and Blake's ex-girlfriend—were contacted by Blake's trial attorney, but they were never asked about Blake's familial, social, or medical background.

*Blake*, 745 F.3d at 982–83 (one footnote omitted).

The neuropsychological and psychological evaluation report referenced in the decision was compiled by Jonathan H. Mack, Psy.D., a neuropsychologist. ECF No. 22. In his motion for an evidentiary hearing, Blake cites to Dr. Mack's report and a report prepared by James R. High, M.D. According to Dr. High's report, Blake suffered from Dissociative Disorder NOS, which, at the time of the murders, "more likely than not significantly impaired" his capacity "to deliberate on his actions, choices and decisions." ECF No. 125-7, p. 169.

Given the Ninth Circuit's decision in *Blake*, the reports of Dr. High and Dr. Mack support Blake's *Martinez* arguments. *See Dickens*, 740 F.3d at 1321. And, while they contest whether the reports demonstrate trial counsel or PCR counsel's ineffectiveness, respondents do not "deny their correctness." ECF No. 183, p. 7-9; *see* Rule 7(c), Rules Governing Habeas Corpus Cases Under Section 2254. Thus, the court will consider the reports part of the record and give them due consideration in resolving the *Martinez* issue and, if necessary, whether Blake is entitled to habeas relief.

The court does not, however, see the need to take live testimony from either expert. *See Williams v. Woodford*, 384 F.3d 567, 590 (9th Cir. 2004) (noting that the district court in a habeas corpus proceeding "need not conduct full evidentiary hearings," but may instead "expand the record ... with discovery and documentary evidence" (quoted source omitted)). The reports from Dr. High and Dr. Mack are lengthy and comprehensive. ECF No. 22; ECF No. 125-7, p. 95-174. Blake does not identify any information not contained in the reports that is necessary for the court to make the relevant determinations. *See Phillips v. Ornoski*, 673 F.3d 1168, 1179 (9th Cir.2012) ("Because, as the district court observed, no witnesses remained to testify at [the] hearing' who had not already been deposed, avoiding the time and expense of the live hearing was a legitimate reason to vacate the earlier order [granting a hearing] ."); *see also, Chang v. United States*, 250 F.3d 79, 86 (2nd Cir. 2001) ("[A district court] may avoid the necessity of an expensive and time consuming evidentiary hearing in every

[federal habeas] case. It may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and ... even affidavits.") (quoting *Raines v. United States*, 423 F.2d 526, 529–30 (4th Cir.1970)).

4. *Family, friends, and trial counsel.*

As noted, Claim Four is premised on trial counsel's alleged failure to investigate and present evidence regarding Blake's dysfunctional family history. The excerpt from the *Blake* decision, above, makes note of the "thirteen declarations from Blake's family and friends." *Blake*, 745 F.3d at 983. The Ninth Circuit's decision confirms the proffered evidence is relevant to Blake's *Martinez* arguments.

The respondents do not challenge the veracity of the declarations, but instead question the need to conduct an evidentiary hearing. ECF No. 183, p. 9 ("[Blake] fails to demonstrate what additional evidence he would obtain through an evidentiary hearing that is not already contained in the declarations or how a hearing would assist this Court in ruling either on the *Martinez* issues or on the merits of Blake's claims."). In addition, Blake does not advance a persuasive reason for this court to take the live testimony of any of the declarants. Thus, here again, the court will expand the record to include the declarations for the purposes of resolving the *Martinez* issue and, if necessary, whether Blake is entitled to habeas relief, but the court will not hold a live hearing.

Blake has also submitted a declaration from Peter Christiansen, Blake's trial counsel. ECF No. 125-7, p. 172-74. That declaration addresses several issues related to Blake's trial IAC claims. Among other things, Christiansen states or concedes the following: (1) his failure to hire an additional neuropsychologist was "not strategic," but instead due to "time and financial constraints, and the limited availability of local neuropsychologists;" (2) he did not provide Dr. Mortillarro with sufficient background information to make a competent diagnosis; (3) he was not aware at the time of trial that Nevada case law precluded an insanity defense based on a defendant's "fear of a *future*

harm as opposed to imminent danger;" (4) he wanted to see how evidence developed before committing to an insanity defense, but the trial judge informed him he would be precluded from raising the defense unless he filed a notice prior to trial; (5) he was unaware at the time of trial of the "benefits of interviewing family members;" (6) he would not have waived the preliminary hearing if he knew the State planned to seek the death penalty; and (7) he did not "have a strategic reason for failing to object to improper jury instructions, the avoiding lawful arrest aggravating circumstance, and the bad character evidence presented at Mr. Blake's trial." *Id.*

The declaration does not address counsel's failure to hire an FASD expert or a future dangerousness expert, but for the reasons stated above, trial counsel's input on those issues would not assist the court. Otherwise, the declaration sufficiently covers the other subjects Blake identifies as requiring a hearing. ECF No. 187, p. 6-7. In addition, respondents do not challenge, or even address, Christiansen's declaration in responding to Blake's motion for evidentiary hearing. ECF No. 183. Thus, the court will consider Christiansen's declaration for the purposes of resolving the *Martinez* issue and, if necessary, whether Blake is entitled to habeas relief, but the court will not hold a live hearing.

> 5. *"Cause" under* Martinez: *Cynthia Dustin, state post-conviction counsel, and Jim Thomas, defense investigator.*

Blake contends that, as part of its *Martinez* "cause" analysis, the court should entertain the testimony of his state PCR counsel, Cynthia Dustin, and her investigator, Jim Thomas. With respect to state PCR counsel's performance, the Ninth Circuit determined that, for the purpose of establishing good cause for failure to exhaust under *Rhines*, Blake made a sufficient showing to meet the *Strickland* standard to the extent PCR counsel "failed to discover, investigate, and present to the state courts the readily available evidence of Blake's abusive upbringing and compromised mental condition." *Blake*, 745 F.3d at 983.

As noted in a previous order, this court takes the view that, while the Ninth Circuit determined Blake's state PCR counsel's *performance* met the *Strickland* standard, the court of appeals did not reach the issue of *Strickland* prejudice in the PCR proceeding. ECF No. 154, p. 11-12. Blake contends an evidentiary hearing will allow him to make the prejudice showing – i.e., that "Dustin's failure to investigate, develop and present evidence of the 'abhorrent conditions of Blake's upbringing and family history" dictated the outcome of the state habeas proceeding." ECF No. 176, p. 14.

Dustin's declaration, which respondents do not challenge, adequately describes her omissions in developing the relevant mitigating evidence and her rationale behind those omissions. ECF No. 125-7, p. 176-78. Thomas's declaration confirms that Dustin terminated his services before he had the opportunity to interview a single witness. ECF No. 55-5 p. 100. In addition, Blake does not identify any additional mitigating evidence he wishes to submit beyond that which he has already submitted. Thus, the court declines to hold an evidentiary hearing on the issue of "cause," but will consider Dustin's and Thomas's declarations and the relevant mitigating evidence in deciding whether Blake suffered *Strickland*-level prejudice in his PCR proceeding as a result of Dustin's errors and omissions.

IT IS THEREFORE ORDERED that petitioner's motion for evidentiary hearing (ECF No. 176) is GRANTED in part and DENIED in part. The court will permit expansion of the record under Rule 7 to include: (1) the reports of Dr. Mack (ECF No. 22) and Dr. High (ECF No. 125-7, p. 95-170); (2) the declarations of friends and family (ECF Nos. 21-2, 21-3, 22-3, 22-4, 22-7, 22-11, 173-1 through 7); (3) the declaration of trial counsel, Christiansen (ECF No. 125-7, p. 172-74); and (4) the declarations of PCR

\\\

\\\

\\\

counsel, Dustin (ECF No. 125-7, p. 176-78), and PCR investigator, Thomas (ECF No. 55-5, p. 100). The court will not, however, conduct an evidentiary hearing.

DATED THIS 21st day of March, 2019.

_____
UNITED STATES DISTRICT JUDGE