UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALFONSO MANUEL BLAKE,<br><br>    Petitioner,<br>v.<br><br>WILLIAM GITTERE, et al.,<br><br>    Respondents. | Case No. 3:09-cv-00327-RCJ-CSD<br><br>ORDER |

On February 9, 2023, this court entered a final order denying petitioner Blake's second amended petition for writ of habeas corpus (ECF No. 124). ECF No. 191. Judgment was entered the same day. ECF No. 192. On March 9, 2023, Blake filed a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). ECF No. 194. With his motion, Blake argues that the court erred by not holding an evidentiary hearing and by failing to consider the cumulative effect of all of trial counsel's ineffectiveness. For reasons that follow, the motion is denied.

Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. "A motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999) (emphasis added)). "Since specific grounds for a motion to amend or alter are not listed in the

rule, the district court enjoys considerable discretion in granting or denying the motion." *Id*. at 1255, n.1 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)). Even so, amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id*.

   1. *Failure to hold an evidentiary hearing*

  Before addressing Blake's specific arguments, the court notes the following regarding Blake's motion for an evidentiary hearing (ECF No. 176) and the court's ruling on that motion (ECF No. 188).

  Shortly after he filed his reply to respondents' answer in this case, Blake filed a motion for evidentiary hearing asking to present evidence in support of his ineffective assistance of counsel (IAC) claims under Claims One through Four of his habeas petition. Because all of the claims are procedurally defaulted, the motion relied primarily on *Martinez v. Ryan*, 566 U.S. 1 (2012), as legal authority for the court to conduct evidentiary hearing. However, Blake also argued that 28 U.S.C. §2254(e)(2) did not prevent the court from holding an evidentiary hearing. Blake identified the following "proposed subjects" for an evidentiary hearing: (1) experts on fetal alcohol spectrum disorders (FASD) and institutional risk of future dangerousness; (2) neuropsychological and psychological / trauma experts; (3) family, friends, and trial counsel; and (4) "cause" under *Martinez*.

  With respect to the first subject, the court determined that a hearing would serve no purpose because, upon preliminary review, Blake's proffered evidence fell short of demonstrating he was entitled to relief. As to the second and third subjects, the court granted Blake's motion but decided that, rather than hold a live hearing, it would instead give Blake's proffered evidence full consideration when it delved into the *Martinez* issue and the merits of the relevant claims. *See Williams v. Woodford*, 384 F.3d 567, 590 (9th Cir. 2004) (noting that the district court in a habeas corpus proceeding "need not conduct full evidentiary hearings," but may instead "expand the record ... with discovery and documentary evidence" (quoted source

omitted)).   For the fourth subject, the court determined an evidentiary hearing was unnecessary because the Ninth Circuit had already determined that the performance of Blake's post-conviction review counsel fell below the *Strickland* [1] standard. The court decided the motion for evidentiary hearing in March 2019 but did not enter its final order on the merits until February 2023. At no point during that four-year period did Blake challenge the court's decision.

Blake now argues that the court erred by resolving the case based on the documentary evidence rather than holding an evidentiary hearing with live testimony.  He contends that "a hearing is necessary to resolve the many factual issues raised by both the State in its pleadings and by this Court in its orders." ECF No. 194 at 10. Having considered the factual issues Blake identifies, the court stands by its decision not to hold an evidentiary hearing.

First, Blake cites the court's holding in its final order on the merits that he had failed present evidence establishing what specific testimony a Tourette's expert would have provided in his case. That holding served as the basis for the court's denial of Claim Two(D), in which Blake alleged his trial counsel were ineffective in failing to obtain an expert on Tourette syndrome. ECF No. 191 at 19. He argues that this holding is incorrect because he made specific allegations in support of Claim Two(D) in his habeas petition.

Blake is correct about the specific allegations, but there is no indication in the record that an expert on Tourette's ever evaluated Blake to determine the impact of the disorder in his particular case. Instead, Blake cited medical journal articles and the evaluation of Dr. Mack, a neuropsychologist whose evaluation served as the basis for Claim Two(B). ECF No. 124 at 49-50. In replying to respondents' answer (ECF No. 163), Blake did not respond to the respondents' argument to this effect or, for that matter, make any specific argument in support of Claim Two(D) at all. ECF No. 172. And, when he subsequently moved for an evidentiary hearing, he proposed to present the evaluations of several experts but made no reference to an expert on

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

3

1  Tourette's. ECF No. 176. Thus, the court finds it odd that Blake is now claiming that the court
2  erred by not holding a hearing to "flesh out the details" of the claim. ECF No. 194 at 7.
3       Next, Blake faults the court for "mak[ing] a credibility determinations without
4  conducting a live hearing." The example he cites is the court's determination that Louis
5  Mortillaro, Ph.D., the defense's the mental health expert, interviewed two of Blake's siblings,
6  Arlene Oliver and Anthony Fleming, despite the siblings' declarations suggesting that Mortillaro
7  had never contacted them. ECF No. 191 at 12 n. 2. Blake contends the determination "comprises
8  a textbook example of a credibility finding that may have differed had in-person testimony been
9  heard." ECF No. 206 at 8.
10      What Blake fails to mention is that Dr. Mortillaro's report includes a detailed account of
11 the information each sibling provided in phone conversations with him. ECF No. 5-13 at 91-92.
12 In addition, both of the siblings' declarations "are dated February 2010, nearly six years after
13 Blake's trial," while "Dr. Mortillaro's report indicates that he interviewed both siblings by
14 telephone a few days prior to finishing his report." ECF No. 191 at 12 n. 2. In sum, the court
15 weighed the likelihood that Dr. Mortillaro would have completely fabricated the accounts of the
16 phone conversations against the likelihood that the siblings simply did not remember talking to
17 Dr. Mortillaro by phone six years earlier. Blake's arguments notwithstanding, a live hearing
18 would not have assisted the court in resolving this dispute.
19      Blake also claims that the court erred by denying him a hearing because he had failed to
20 "identify any information not contained in the reports that is necessary for the court to make the
21 relevant determinations" (ECF No. 188 at 7), then later holding that his experts failed to
22 "adequately address Dr. Bittker's testimony" (ECF No. 191 at 17). The reports referred to in the
23 prior holding were prepared by Jonathan H. Mack, Psy.D., and James R. High, M.D., both of
24 whom conducted evaluations for the purpose of determining whether Blake had significant
25 mental health impairments that should have been presented to the jury in the penalty phase of the
26 trial. ECF No. 22 at 2; ECF 125-7 at 95. The court relied on Dr. Bittker's testimony to reject
27
28

1  Claim 2(A), more specifically, to find that there is not a reasonable probability that, but for
2  counsel's failure to adequately prepare Dr. Mortillaro, the jury would not have found "that Blake
3  murdered his victims willfully, deliberately, and with premeditation." ECF No. 191 at 17.
4      Dr. Mack opined in his report that Blake was in a "dissociative state" at the time of the
5  homicides, such that he was "unable to deliberate and/or formulate the intent to kill the victims."
6  ECF No. 22 at 41. According to Dr. High's report, "it is certainly possible, and more likely than
7  not, that shortly before, during, and for a time after the crime Blake was in a dissociative state,"
8  which means that "a primitive pre-rational part of him would be acting, unmodified by adult
9  reason, deliberation, and contemplation." ECF No. 125-7 at 169. This court concluded that there
10 was not a reasonable likelihood that these opinions would have changed the guilt-phase outcome.
11 The court noted that, although both doctors disagreed with Dr. Bittker's diagnoses, neither of
12 their reports adequately addressed Dr. Bittker's opinion that Blake's methodical conduct before,
13 after, and during the crime belied the notion that Blake did not possess the requisite intent for
14 first-degree murder.
15     As this court noted in its order deciding Blake's motion for evidentiary hearing, the
16 reports from Dr. High and Dr. Mack are lengthy and comprehensive. ECF No. 188 at 7. Both
17 doctors had reviewed Dr. Bittker's trial testimony, yet neither report explained how Blake could
18 have acted so rationally despite his severely impaired mental state. The court is not convinced
19 that the doctors would have provided testimony at a live hearing that would have altered the
20 court's resolution of Claim 2(A).
21     Finally, Blake cites as error this court's refusal to entertain the testimony of Natalie
22 Novick-Brown, Ph.D., a professed expert on FASD. Here again, Blake's argument omits
23 important details. The court made that ruling because Novick-Brown had not personally
24 evaluated Blake, just reviewed "preliminary information and materials" relevant his case, and
25 merely speculated that an FASD diagnosis was likely "once Blake undergoes medical
26 assessment." ECF No. 188 at 3. Blake insists that an evidentiary hearing was necessary to
27
28

determine whether Blake suffers from FASD, but Novick-Brown was clearly not in a position to provide conclusive, or even persuasive, evidence on that issue.

    2. *Failure to consider the cumulative effect of trial counsel's ineffectiveness*

Blake contends that this court erred by not adequately assessing the cumulative effect of trial counsel's errors and omissions when considering prejudice. He points to the court's discussion of Claim One where the court merely concluded that none of his IAC claims warranted relief and that he had failed to demonstrate that the cumulative effect of counsel's alleged deficiencies rendered the result of his trial unreliable. Blake's argument does not call for amendment of the judgment.

As an initial matter, he misinterprets the discussion of Claim One by asserting that the court denied his cumulative effect claim *because* it had determined that none of his individual claims warranted relief. Instead, the court concluded that no individual IAC claim warranted relief *and* that the IAC claims considered together did not warrant relief. Certainly, the court could have provided more analysis, however, Blake's argument in support of cumulative error and prejudice was similarly brief.[2]

Blake attempts to compare this case to *Rogers v. Dzurenda*, 25 F.4th 1171 (9th Cir. 2022), but the court in *Rogers* had determined that trial counsel had performed below the *Strickland* standard in several respects. 25 F.4th at 1183-90. In addition, the *Rogers* court explained how counsel's errors exacerbated other errors such that their combined effect undermined the court's confidence in the outcome of the trial. *Id*. at 1190-96. Here, it was only trial counsel's failure to investigate and present evidence regarding Blake's dysfunctional family history that fell below an objective standard of reasonableness. And, even if the court were to factor in errors that were not serious enough to meet the *Strickland* performance standard, Blake offers no argument as to how those errors, in concert, meet the *Strickland* prejudice standard.

---

[2] Here is the complete argument: "Blake pleaded that the multiple errors of trial counsel contained herein cumulatively prejudiced him. Therefore, for the reasons set forth above, Blake requests that the Court grant him relief." ECF No. 172 at 230 (citation omitted).

**IT IS THEREFORE ORDERED** that Blake's motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e) (ECF No. 194) is DENIED.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied as jurists of reason would not find the court's decision debatable or incorrect.

**IT IS FURTHER ORDERED** that Blake's motion for extension of time (ECF No. 204) is GRANTED *nunc pro tunc* as of May 1, 2023.

DATED THIS 12th day of October 2023.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE